UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS GESUALDI, LOUIS BISIGNANO, DARIN
JEFFERS, MICHAEL O'TOOLE, MICHAEL
BOURGAL, FRANK H. FINKEL, JOSEPH A.
FERRARA, SR., MARC HERBST, DENISE
RICHARDSON, and THOMAS CORBETT as Trustees
and fiduciaries of the Local 282 Welfare Trust Fund, the
Local 282 Pension Trust Fund, the Local 282 Annuity
Trust Fund, the Local 282 Job Training Trust Fund, and
the Local 282 Vacation and Sick Leave Trust Fund,

                      Plaintiffs,

       -against-

LR SAFETY CONSULTANTS & CONSTRUCTION
SERVCIES, LLC, 4L EQUIPMENT LEASING, LLC,
INTERCOUNTY PAVING ASSOCIATES LLC,
FRANK LIZZA, CARL LIZZA, RAMON DE LOS
SANTOS, unknown John Does and Jane Does 1-10,
and unknown corporations A-J, individuals and
corporations conspiring with Defendants to defraud the
Plaintiffs' Funds, individually and jointly and
severally,

                      Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 19-2404 (DRH)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Plaintiffs, the Trustees ("Plaintiffs" or the "Trustees") of the various Local 282 Funds (the "Funds"), commenced this action on April 25, 2019, solely against Defendant LR Safety Consultants & Construction Services, LLC ("LR Safety"), pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPAAA"), 29 U.S.C. §§ 1381 et seq., and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for unpaid fringe benefit contributions that LR Safety was required to make under its collective bargaining agreements with the Funds. (See generally Compl.,

1

Docket Entry ("DE") [1].)  On January 24, 2020, Plaintiffs amended their Complaint to include 4L Equipment Leasing LLC and Intercounty Paving Associates LLC as additional corporate defendants (collectively, the "Corporate Defendants"), seeking to hold all of the Corporate Defendants jointly and severally liable for LR Safety's unpaid fringe benefit contributions under an alter ego theory.  (Am. Compl., DE [17], ¶¶ 1-3.)  Also named in the Amended Complaint are individual defendants Frank Lizza, Carl Lizza, and Ramon De Los Santos ("De Los Santos"), who are the owners/operators of the Corporate Defendants.  (Id. ¶¶ 15-17.)  The Trustees also assert a cause of action for common law fraud against Frank Lizza and De Los Santos.  (Id. ¶¶ 117-31.)

The various defendants all interposed Answers to the Amended Complaint.  On March 4, 2020, LR Safety filed both an Amended Answer and a Second Amended Answer to the Amended Complaint.  (DE [31], [32].)  De Los Santos filed his Answer to the Amended Complaint on March 17, 2020 (DE [33].)  Both LR Safety and De Los Santos assert various affirmative defenses and counterclaims in their Answers.  Presently before the Court, on referral from the Honorable Denis R. Hurley, is the Trustees' motion to strike LR Safety's and De Los Santos's third and fourth affirmative defenses, pursuant to Federal Rules of Civil Procedure 9(b) and 12(f), and to dismiss their counterclaims, pursuant to Rules 12(b)(1) and 12(b)(6).  For the following reasons, this Court recommends that the Trustees' motion to dismiss be granted in its entirety.

BACKGROUND

The facts set forth below are taken from the Trustees' Amended Complaint.  As discussed below, they are accepted as true for the purposes of this motion.

I.	The Parties

Plaintiffs herein are trustees and fiduciaries of the various employee benefit Funds, which were established pursuant to the terms of multiple collective bargaining agreements (the "CBAs") between the Building Material Teamsters Local 282, IBT (the "Union") and Defendant LR Safety.  (Am. Compl., DE [17], ¶¶ 6-9.)  The Funds are maintained pursuant to the terms of the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference into the CBAs.  (Id. ¶ 10.)  The Funds provide various pension, health and welfare, annuity, job training, vacation and sick leave, and legal service benefits to covered workers, retirees, and their dependents.  (Id. ¶ 11.)

Defendant Frank Lizza was an officer of Intercounty Paving Associates, LLC ("Intercounty Paving"), a non-union construction company and a Lizza family owned company.  (Id. ¶ 41.)  Intercounty Paving provides road construction and paving services to commercial and public customers throughout New York and New Jersey, including in the jurisdiction of the Union, which covers the five boroughs of New York City and Long Island.  (Id.)  Between 2006 and the present, Defendant De Los Santos was and is an employee of Intercounty Paving.  (Id.)

Defendant 4L Equipment Leasing LLC ("4L") is owned and operated by Frank Lizza and owns multiple heavy-duty trucks designed to haul materials used in road construction.  (Id. ¶¶ 44-45.)  Intercounty Paving and 4L share a vehicle yard in Westbury, New York, with 4L supplying trucks and drivers for Intercounty Paving's contracts.  (Id. ¶¶ 46-47.)

In or about 2014, Frank Lizza and the other principals of 4L and Intercounty funded and assisted De Los Santos in establishing LR Safety, a New York corporation established to truck road and construction materials and demolition debris to and from construction sites on Long

Island, in New York City, New Jersey, and elsewhere. (Id. ¶ 48.) LR Safety owned no trucks or equipment, instead using 4L's trucks and employees to perform work. (Id. ¶¶ 49-50.)

II.     The CBAs

LR Safety entered into two CBAs with the Union: (1) the Nassau/Suffolk Heavy Construction & Excavating and Asphalt Industry contract dated July 1, 2011 through June 30, 2016, signed on or about June 26, 2014 with an effective date of May 19, 2014, and renewed by Memorandum of Agreement for the period July 1, 2011 through June 30, 2019; and (2) the General Contractors Association of New York Heavy Construction & Excavating agreement, in effect July 1, 2012 through June 30, 2016 and renewed for the period July 1, 2017 through June 30, 2021, as modified by the Metropolitan Truckers Association and Independent Trucker's Contract "Plant and Light Construction Work" provision. (Id. ¶ 20.) At all relevant times, LR Safety was bound by the Trust Agreement, which is incorporated by reference into the CBAs. (Id. ¶ 21.)

Pursuant to the CBAs, LR Safety was required to submit remittance reports to the Funds, identifying the employees who performed work covered by the CBAs and stating the number of hours each such employee performed covered employment. (Id. ¶ 23.) In addition to the remittance reports, LR Safety was also required to remit contributions to the Funds on behalf of all employees who performed covered work, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs. (Id. ¶ 24.) Pursuant to the Trust Agreement, if an employer fails to remit benefit contributions by the date due, the employer is liable to the Funds for: (1) delinquent contributions; (2) interest at the rate of 1.5% per month (18% per annum), from the date when payment was due to the date when payment is made; and (3) an amount equal to the greater of (a) the amount of interest charged on the unpaid

4

contributions, or (b) liquidated damages equal to 20% of the unpaid contributions; and (4) the Funds' attorney's fees and costs. (Id. ¶ 31.) The Trust Agreement further requires an employer to submit to periodic audits of its pertinent books and records. (Id. ¶ 32.) The Trust Agreement authorizes the Trustees to bring an action to enforce an employer's obligations to the Funds under the CBAs. (Id. ¶ 35.)

III.   The Allegations of Misconduct

As required by the CBAs, LR Safety submitted remittance reports to the Funds for some time periods. (Id. ¶ 69.) However, the remittance reports reported only some of the hours that drivers worked at construction sites and omitted hours drivers spent traveling to and from the sites, despite payment to the Funds being required for such travel hours. (Id.) For the period July 2018 through December 2018, LR Safety submitted remittance reports, self-reporting contributions to the Funds of various amounts and failed to remit the remaining amounts owed for July 2018, as well as all contributions self-reported for August 2018 through December 2018. (Id. ¶ 71.)

By letter dated February 20, 2019, the Funds demanded payment from LR Safety of the unpaid and underpaid contributions for the period July 2018 through December 2018, in the amount of $887,523.57. (Id. ¶ 72.) Following the February 20, 2019 letter, LR Safety made three payments earmarked for the Welfare Fund, totaling $307,777.53. (Id. ¶ 73.) The remaining balance of unpaid self-reported contributions to the Funds remains unpaid. (Id. ¶ 74.)

LR Safety was also required to make all payments in a timely manner, yet failed to do so. (Id. ¶ 76.) For the period May 1, 2017 through December 2018, LR Safety submitted fringe benefit contributions, or partial contributions, late. (Id. ¶ 79.) By letter dated February 20, 2019, the Funds demanded that LR Safety pay interest and liquidated damages for late-paid

contributions for the period May 1, 2017 through December 2018.  (Id. ¶ 80.)  To date, LR Safety has failed and refused to pay the interest and liquidated damages for late-paid contributions for the period May 1, 2017 through December 2018.  (Id. ¶ 81.)  Moreover, LR Safety owes interest and liquidated damages for late-paid contributions for the period July 2018 through December 2018 based on the three payments made to the Welfare Fund following the February 20, 2019 demand letter.  (Id. ¶ 82.)  LR Safety has also refused to submit to an audit of its books and records, despite written demand by the Funds that it do so.  (Id. ¶¶ 88-91.)

On or about March 12, 2019, LR Safety entered into a "Shutdown Agreement" with the Union, effective January 1, 2019, which terminated the CBAs, and all obligations thereunder "forever."  (Id. ¶ 20.)  In addition, the Shutdown Agreement terminated "any and all other agreements between the parties" and all obligations thereunder, as of December 31, 2018.  (Id.)

IV.     The Amended Complaint and the Answers

The Amended Complaint seeks payment of the unpaid contributions, interest, liquidated damages and attorney's fees and costs, pursuant to both ERISA and the LMRA.  (Id. ¶¶ 97-110.)  The Trustees also seek to compel LR Safety to submit to an audit for the period January 2013 through December 2018.  (Id. ¶ 110.)  In addition, the Trustees assert a cause of action for fraud, alleging that LR Safety and the Individual Defendants knowingly misrepresented to the Funds the hours worked in covered employment by its employees, as well as the contributions owed to the Funds.  (Id. ¶¶ 111-116.)  Finally, the Trustees seek to hold all Defendants jointly and severally liable for the damages owed, based on the federal indictment of Frank Lizza and De Los Santos for embezzlement of employee benefit plans and submitting false retirement and union benefit statements.  (Id. ¶ 118.)  According to the Trustees, Frank Lizza controlled all of

the Corporate Defendants, with Intercounty Paving and 4L being alter egos of LR Safety, and was assisted in defrauding the Funds by De Los Santos. (Id. ¶¶ 119-24.)

In their Amended Answers, LR Safety and De Los Santos (the "Counterclaimants") assert various affirmative defenses and counterclaims. Plaintiffs now seek to strike, pursuant to Rules 9(b) and 12(f), the Counterclaimants' third affirmative defense for "fraud in the execution" of the CBAs and the fourth affirmative defense for breach on the part of the Union of the Most Favored Nations ("MFN") clause in the CBAs. Plaintiffs also seek to dismiss the Counterclaimants' counterclaim seeking reimbursement for alleged overpayments to the Funds due to the Union's alleged breach of the MFN clause, pursuant to Rules 12(b)(1) and 12(b)(6). The Counterclaimants oppose the motion to dismiss.

## DISCUSSION

I.    Motion to Strike

    A.    Legal Standards

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Three prerequisites must be satisfied before a court may grant a motion to strike defenses." Trustees of the Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc., No. 11-CV-3180, 2012 WL 4327070, at *2 (E.D.N.Y. Sept. 19, 2012) (quoting FDIC v. Pelletreau & Pelletreau, 956 F. Supp. 381, 389 (E.D.N.Y. 1997)). The three prerequisites are as follows: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to proceed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." Wilner's Livery, 2012 WL

4327070, at *2 (quoting Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005)) (additional citation omitted).

Rule 9(b) requires a defendant to plead an affirmative defense alleging fraud with particularity. See Fed. R. Civ. P. 9(b); see also Yurman Design Inc. v. Chaindom Enters. Inc., No. 99 Civ. 9307, 2000 WL 897141, at *3 (S.D.N.Y. July 5, 2000). To properly plead an affirmative defense with particularity, a party must: "(1) specify the statements that the party contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." Wilner's Livery, 2012 WL 432070, at *2 (citing Yurman Design, 2000 WL 897141, at *3). As a technical matter, challenges to affirmative defenses sounding in fraud under Rule 9(b) result in dismissal, rather than being stricken. See Wilner's Livery, 2012 WL 432070, at *1 n.1 (citing Yurman Design, 2000 WL 897141, at *3).

B.  Fraud in the Execution

Counterclaimants both assert in their third affirmative defenses that the CBAs are void due to fraud in the execution "as there was a misrepresentation as to the character and/or essential terms of the [CBAs]" and that Counterclaimants signed the CBAs "without knowing and/or having a reasonable opportunity to know of their character and/or essential terms." (LR Safety 2d Am. Ans., DE [32], ¶ 134; De Los Santos Am. Ans., DE [33], ¶ 134.) Counterclaimants base the purported fraud on an alleged concealment by the Funds and the Union of a 2011 "side letter" with another employer that Counterclaimants allege violated the MFN clause. According to Counterclaimants, the 2011 side letter resulted in LR Safety paying monies to the Union that were not due and owing.

8

It is well-settled that the Second Circuit has identified only two defenses to a collection action under Section 515 of ERISA: "(1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990) (citations omitted). "Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as whole." Id.

Fraud in the inducement is not a permissible defense under Section 515. See id. (citation omitted); see also Wilner's Livery, 2012 WL 4327070, at *5. Counterclaimants, however, assert the defense of fraud in the execution, which "occurs where there is a misrepresentation as to the character or essential terms of a proposed contract and a party signs without knowing or having a reasonable opportunity to know of its character or essential terms," and which is permissible under Benson. Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 31-32 (2d Cir. 1997) (citation and internal quotation marks omitted).

To prevail on a claim of fraud in the execution, a party "must demonstrate 'excusable ignorance of the contents of the signed writing.'" Bricklayers & Allied Craftworkers Loc. 2 v. C.G. Yantch, Inc., 316 F. Supp. 2d 130, 147 (N.D.N.Y. 2003) (quoting Hetchkop, 116 F.3d at 32) (additional citation omitted). Here, Counterclaimants do not assert that the Funds or the Union misrepresented the obligations imposed by the CBAs. Rather, Counterclaimants' argument is that the 2011 side letter with a different employer violates the CBAs' MFN clause. The existence of the side letter, however, in no way invalidates Counterclaimants' obligations to pay fringe benefit contributions. See Bricklayers, 316 F. Supp. 2d at 148 ("That

9

[Counterclaimants] may have been mistaken or misled as to the scope of [their] obligation does not change the fact that [they] knew of the obligation in general.").

Moreover, an agreement between the Union and another employer that included provisions more favorable than those governing the Union's agreement with Counterclaimants "does not control the question of whether [Counterclaimants] ha[ve] liability to make payment to the Funds." Greenes v. Vijax Fuel Corp., 326 F. Supp. 2d 464, 468 (S.D.N.Y. 2004). The affirmative defense pleaded by Counterclaimants "has no connection to whether [they] were required to contribute to the Funds." Id. Counterclaimants do not allege that the underlying CBAs are void, "or even that the specific sections under which contributions are mandated are void," or that such contributions are illegal. Bricklayers, 316 F. Supp. 2d at 148. As such, Counterclaimants allege only fraud in the inducement, which is not a permissible defense under ERISA. Accordingly, Counterclaimants' third affirmative defenses should be stricken from their Answers.

A separate ground for dismissal of Counterclaimants' third affirmative defenses exists under Rule 9(b) as well. The third affirmative defense in each Answer states only that there was a misrepresentation as to the character and/or essential terms of the CBAs. As stated above, Rule 9(b) requires a party to specify the statements it contends are fraudulent, as well as identify the speaker, where and when the statements were made, and how they are fraudulent. See Yurman Design, 2000 WL 897141, at *3. Counterclaimants' pleadings fall woefully short of this standard. While Counterclaimants attempt to correct their pleading deficiency by submitting a factual affidavit from De Los Santos, which includes additional details relating to the purported fraud in the execution of the CBAs, consideration of such information is not permissible in the context of a motion to strike. See Wilner's Livery, 2012 WL 4327070, at *5 (citing Telectronics

10

Proprietary, Ltd. v. Medtronic, Inc., 687 F. Supp. 832, 840 n.1 (S.D.N.Y. 1988)) ("In deciding a motion to strike, a court will not consider matters outside the pleadings . . . .").

Finally, Counterclaimants attempt to save their third affirmative defenses from dismissal by arguing in their memorandum of law in opposition to the within motion that the CBAs are void because they are contrary to New York public policy. (Counterclaimants Mem. Of Law in Opp'n 22.) As an initial matter, Counterclaimants fail to assert this defense in their Answer. However, even if it were asserted, it would fail because federal common law, not state law, "sets forth the available defenses in collection actions." Mason Tenders Dist. Council Welfare Fund v. Liberty Contracting Corp., No. 97 Civ. 5568, at *4 (S.D.N.Y. Aug. 27, 1998).

Based on the foregoing, this Court respectfully recommends that the Trustees' motion to strike be granted and that Counterclaimants' third affirmative defenses be stricken from their Answers.

    C.    Breach of the MFN Clause

Counterclaimants' fourth affirmative defenses assert that as a result of the Union's purported breach of the MFN clause in the CBAs, it was not entitled to collect the fringe benefit contributions that LR Safety paid for work performed in Nassau and Suffolk Counties. (LR Safety 2d Am. Ans. ¶ 135; De Los Santos Am. Ans. ¶ 135.)

The MFN clause states, in pertinent part, that "[i]f during the life of [the CBA], the Union grants to any Heavy Construction or Excavating Employer for its operations in Nassau and Suffolk Counties more favorable terms or conditions of employment than those contained in [the CBA], and this is found to be the case by an Arbitrator per expedited arbitration, [LR Safety] shall have the right to have such favorable terms and conditions incorporated herein." (Id.) According to Counterclaimants, the Union granted a more favorable agreement to another

11

employer with respect to its operations in Nassau and Suffolk Counties, which caused the Union to withdraw its jurisdiction in those counties, allowing the other employer to operate as a non-union employer in those counties. (Id.) Counterclaimants asserts that as a result of the Union's agreement with the other employer, they were not entitled to collect fringe benefit contributions from LR Safety for any work performed in Nassau and Suffolk Counties. (Id.)

As set forth above in connection with Counterclaimants' third affirmative defense, "[w]hether the agreement between [the Union and another employer] included provisions more favorable than those governing [the Union's] agreement with [LR Safety] does not control the question of whether [LR Safety] ha[d] liability to make payment to the Funds." Greenes, 326 F. Supp. 2d at 468. Regardless of the Union's agreement with another employer, LR Safety was still required to make fringe benefit contributions under the CBAs it entered into with the Union and it simply failed to fulfill that obligation. "Under the case law of this Circuit and the language of ERISA, [Counterclaimants'] claimed damages offsets from the 'most favored nations' clause do not provide a defense against plaintiffs' ERISA claims." Id. Accordingly, Counterclaimants' fourth affirmative defenses are invalid and the Trustees' motion to strike the defenses from their Answers should be granted.

II.     Motion to Dismiss

The Trustees also seek to dismiss the counterclaims alleged in both LR Safety's and De Los Santos's Amended Answers, pursuant to Rules 12(b)(1) and 12(b)(6), which seek the return of overpayments allegedly made to the Union as a result of the Union's alleged breach of the MFN clause. (LR Safety 2d Am. Ans. ¶¶ 159-76; De Los Santos Am. Ans. ¶¶ 159-76.) When considering a motion dismiss brought pursuant to both Rule 12(b)(1) and 12(b)(6), the Court must first consider dismissal for lack of jurisdiction "since dismissal of an action for lack of

subject matter jurisdiction will render all other accompanying defenses and motions moot." Amalgamated Cotton Garment & Allied Indus. Retirement Fund v. Youngworld Stores Group, Inc., No. 99-3852, 2001 WL 314650, at *2 (S.D.N.Y. Mar. 30, 2001); see also Cement and Concrete Workers Dist. Council Fund v. Atlas Concrete Constr. Corp., No. CV 04-0915, 2007 WL 526621, at *2 (E.D.N.Y. Feb. 13, 2007) (noting that "the jurisdictional question must come first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.") (citation and internal quotation marks omitted).

  A. Legal Standards

A district court should dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) where the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When reviewing a motion to dismiss for lack of jurisdiction, "the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'" Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 (S.D.N.Y. 2013) (quoting J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F F.3d 107, 110 (2d Cir. 2004)) (alteration in original). The Court may also "consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question." Ighile v. Kingsboro ATC, No. 16-CV-4294, 2018 WL 1970737, at *2 (E.D.N.Y. Apr. 25, 2018) (citing cases).

Conversely, when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court is required to accept all factual allegations in the Complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012). "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

### B. Dismissal for Lack of Subject Matter Jurisdiction

The Trustees argue that Counterclaimants' counterclaims should be dismissed because it is well-settled that employers do not have standing to bring an action under ERISA. See, e.g., Tuvia v. Convalescent Ctr., Inc. v. Nat'l Union of Hosp. and Health Care Employees, 717 F.2d 726, 730 (2d Cir. 1983); Atlas Concrete Constr. Corp., 2007 WL 526621, at *3; Amalgamated Cotton, 2001 WL 314650, at *3. As stated by the Second Circuit, the purpose of ERISA is to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law." Benson, 907 F.2d at 314. "It does not provide relief to employers seeking to recover contributions already made." Id.

Counterclaimants fail to address this argument entirely in their opposition to the within motion. "It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." Ross v. Port Chester Housing Auth., No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) (collecting cases); see also Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause Plaintiff did not address defendant[s'] motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."). Accordingly, the Trustees' motion to dismiss Counterclaimants' counterclaims for lack of jurisdiction under Rule 12(b)(1) should be granted.

C.   Dismissal on the Merits

Notwithstanding the fact that Counterclaimants failed to address that portion of the Trustees' motion that seeks dismissal for lack of jurisdiction – which permits dismissal of the counterclaims on that basis alone – the Court will also analyze the counterclaims on the merits.

"Under 29 U.S.C. § 1103(c)(2)(A)(ii) of ERISA, employers that make contributions to multi-employer benefit plans by mistake of fact or law may have their payments returned 'within 6 months after the plan administrator determines that the contribution was made by mistake.'" Atlas Constr. Corp., 2007 WL 526621, at *4 (quoting 29 U.S.C. § 1103(c)(2)(A)(ii)). "Based on this provision, courts have concluded that 'a limited right to recover overpayments exists.'" Atlas Constr. Corp., 2007 WL 526621, at *4 (quoting Ciminelli Constr. Co., Inc. v. Buffalo Laborers Supplemental Unemployment Ben. Fund, 976 F.2d 834, 836 (2d Cir. 1992)). "Returning an overpayment to an employer under this section is permissive, not mandatory." Bricklayers, 316 F. Supp. 2d at 152 (citing Dumac Forestry Servs., Inc. v. Int'l Bhd. of Elec. Workers, 814 F.2d 79, 82 (2d Cir. 1987)).

A plan's refusal to return an overpayment may only be challenged by the employer if the

15

plan's refusal to return the overpayment is "arbitrary and capricious." Ciminelli, 976 F.2d at 834. A district court's review of administrative decisions regarding the refund of overpayments is "limited," as "Congress evidently believed that the risk of mistaken contributions should rest largely with the employer." Id. at 836. Such limited review "requires that the employer request a refund from the fund, and that the request be denied." Mason Tenders Dist. Council of Greater N.Y. v. Exterior Wall and Building Consultants, Inc., No. 15-cv-9807, 2017 WL 2992204, at *3 (S.D.N.Y. July 13, 2017) (citing Ciminelli, 976 F.2d at 835-36 and Dumac, 814 F.2d at 80-81). District courts within this Circuit routinely dismiss claims for overpayment brought by employers against funds where the employer fails to allege that a demand for return of the overpayment was made upon the fund. See, e.g., Mason Tenders Dist. Council, 2017 WL 2992204, at *3; Bricklayers, 316 F. Supp. 2d at 152.

Here, it is undisputed that Counterclaimants have made no demand for overpayment to the Funds. Recognizing this deficiency, Counterclaimants argue that submitting a demand for overpayment would have been futile based on the Trustees' alleged fraud. (Counterclaimants Mem. of Law 24.) However, Counterclaimants offer no case law to support their position. The same standard of demand and denial applies where, as here, an employer alleges overpayment only after the fund brings a lawsuit against the employer for alleged underpayment of contributions. See Brown v. Health Care & Ret. Corp. of Am., 25 F.3d 90, 94 (2d Cir. 1994) "Precedent thus does not support the [Counterclaimants'] argument that [they] should be excused from the requirement that it first demand a refund from the fund before bringing a lawsuit." Mason Tenders Dist. Council, 2017 WL 2992204, at *3.

Since no demand for overpayment has been made upon the Funds by Counterclaimants, "the Funds could not have acted in an arbitrary and capricious manner in denying the request."

16

Id.; see also Bricklayers, 316 F. Supp. 2d at 153. Accordingly, the counterclaims fail as a matter of law and the Trustees' motion to dismiss the counterclaims, pursuant to Rule 12(b)(6), should be granted.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion to strike the third and fourth affirmative defenses contained in Defendants LR Safety's and Ramon De Los Santos's Answers, and to dismiss the counterclaims asserted by LR Safety and De Los Santos be granted in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated: Central Islip, New York
      November 3, 2020                             /s/     Anne. Y. Shields
                                                                                ANNE Y. SHIELDS
                                                                                United States Magistrate Judge